### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HEATHER RICHARDS, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | |
| ALTERNATIVE COUNSELING | : | PLAINTIFF REQUESTS TRIAL BY JURY |
| ASSOCIATES, INC.; MICHAEL | : | |
| GREENBURG (individually); PATTY | : | |
| DAVIDSON (individually); KATHLEEN | : | |
| CURTIN (individually); EDWARD | : | |
| LEONARD (individually); and BRENDA | : | |
| THARP (individually) | : | |
| | : | |
| Defendants | : | |
| | : | |

Plaintiff, HEATHER RICHARDS, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants ALTERNATIVE COUNSELING ASSOCIATES, INC., MICHAEL GREENBURG (individually), PATTY DAVIDSON (individually), KATHLEEN CURTIN (individually), EDWARD LEONARD (individually), and BRENDA THARP (individually) (collectively "Defendants") and avers the following:

**PARTIES**

1.      PLAINTIFF HEATHER RICHARDS (hereinafter also referred to as "PLAINTIFF") is an individual, African American female who is a resident of the Commonwealth of Pennsylvania.

2.      At all times material, Defendant, ALTERNATIVE COUNSELING ASSOCIATES, INC., (hereinafter also referred to as "Defendant ACA"), was and still is a miscellaneous corporation organized and existing by virtue of the laws of the Commonwealth of Pennsylvania with its principal place of business located at 438 E. High Street, Pottstown, PA 19464.

3.      Defendant ACA is a drug treatment and therapy center.

4.      Defendant MICHAEL GREENBURG (hereinafter also referred to as "Defendant GREENBURG") was and is still employed by Defendant ACA in an executive capacity.

5.      Defendant Greenburg is a Caucasian male.

6.      At all relevant times Defendant GREENBURG maintained supervisory authority over PLAINTIFF and all other staff of Defendant ACA including the Executive Director.

7.      Defendant PATTY DAVIDSON (hereinafter also referred to as "Defendant DAVIDSON") was employed by Defendant ACA as the Executive Director until such point that she separated from the position and was replaced by Defendant KATHLEEN CURTIN.

8.      Defendant DAVIDSON is a Caucasian female.

9.      At all relevant time Defendant DAVIDSON maintain supervisory authority over PLAINTIFF.

10.     Defendant KATHLEEN CURTIN (hereinafter also referred to as "Defendant CURTIN") was and still is employed by Defendant ACA as the Executive Director.

11.     Defendant CURTIN is a Caucasian female.

12.     At all relevant times after her start date, Defendant CURTIN held supervisory authority over PLAINTIFF.

13.     Defendant EDWARD LEONARD, (hereinafter also referred to as "Defendant LEONARD") was and still is employed by Defendant ACA as a Counselor.

14.     Defendant LEONARD is a Caucasian male.

15.     At all times material, Defendant LEONARD held supervisory authority over PLAINTIFF.

16.     Defendant BRENDA THARP, (hereinafter also referred to as "Defendant THARP") was and still is employed by Defendant ACA as an Administrative Assistant.

17.     Defendant THARP is a Caucasian female.

2

18.     At all times material, Defendants were the joint employers of PLAINTIFF. At all times relevant to this civil action Defendants were the joint employers of PLAINTIFF.

## NATURE OF THE CASE

19.     Plaintiff complains pursuant to Section 1981, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); 42 U.S.C.; the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"), under the laws of the Commonwealth and seeks damages to redress injuries Plaintiff suffered as a result of Defendants' discrimination, harassment, retaliation and the hostile work environment which ultimately led to Plaintiff's unlawful termination from Plaintiff's employment for Defendants.

## JURISDICTION AND VENUE

20.     This action involves a Question of Federal Law under Section 1981, Title VII of the Civil Rights Act of 1964. The honorable Court also has supplemental jurisdiction over the Commonwealth Law Causes of Action.

21.     Venue is proper in the Eastern District of Pennsylvania as PLANTIFF was employed by Defendants and worked in the Montgomery County, Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

22.     On or around September 14, 2020, PLAINTIFF filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein. PLAINTIFF's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

23.     On or about November 30, 2020 the EEOC sent a Dismissal and Notice of Rights to PLAINTIFF by regular mail.

24.     This action is hereby commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

25.     PLAINTIFF's PHRA claims are still pending before PCHR because less than one year has elapsed since Plaintiff filed her PHRA.

26.     After the one year waiting period has elapsed on PLAINTIFF's PHRA claim, PLAINTIFF will amend her complaint to assert the newly ripened causes of action under the PHRA against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## MATERIAL FACTS

27.     On or about September 20, 2018, PLAINTIFF was hired by Defendant ACA as a monitor.

28.     In December 2019, PLAINTIFF was promoted to the position of Admissions Counselor.

29.     From the commencement of her employment with Defendant ACA, Defendants THARP and LEONARD spoke to PLAINTIFF in a derogatory and belittling manner.

30.     PLAINTIFF would overhear comments and conversations between Defendants THARP and LEONARD which were held out in the open, wherein they referred to PLAINTIFF as "stupid," "ghetto," or a "that black bitch," among other racially insensitive and demeaning remarks.

31.     Defendants THARP and LEONARD went out of their way to make life more difficult for PLAINTIFF, questioning her admission decisions in a non-constructive manner, refusing to tell her when a client appeared for admission and hiding office supplies, as examples.

32.     PLAINTIFF repeatedly reported the behavior of Defendants THARP and LEONARD to DEFENDANT ACA's then Executive Director Defendant DAVIDSON, but the behaviors were never addressed.

4

33.     Upon information and belief, several other employees complained about the behavior of Defendants THARP and LEONARD, including all other black employees, but the behaviors were never addressed or corrected.

34.     In January 2020, the behaviors of Defendants THARP and LEONARD began to extend beyond passive aggressive remarks and other microaggressions. They began making unsolicited remarks directly to PLAINTIFF that she was "unqualified" for her position and that she did not have any authority to decide who was or was not admitted into the facility. As an Admissions Counselor, such decisions were the primary focus of PLAINTIFF's position. Again, PLAINTIFF reported the conversation and that she was being publicly undermined and ridiculed to Defendant DAVIDSON, and again the behaviors were not addressed.

35.     On February 12, 2020, PLAINTIFF was speaking on the phone to a rehabilitation center in order to provide information about Defendant ACA's facilities for a potential client. DEFENDANT THARP began screaming at PLAINTIFF about a random issue, completely disregarding that PLAINTIFF was on the phone working and providing crucial client care information. This behavior substantially interfered with PLAINTIFF's ability to perform her job.

36.     Later in February 2020, Defendant THARP ordered office supplies, which is her job to do. She refused to order any supplies for PLAINTIFF and told her to buy her own because she (Defendant THARP) was not going to provide PLAINTIFF with supplies.

37.     On February 19, 2020, PLAINTIFF again reported Defendant THARP's behaviors to Defendant DAVIDSON. She complained that Defendant THARP used racially insensitive descriptors and epithets to refer to her. She complained that Defendant THARP would overstep her boundaries and felt that she had the authority to critique PLAINTIFF's job performance despite having no skills or training in admissions.

5

38.     Defendant THARP learned that PLAINTIFF complained about her behavior and confronted her out in the open, causing a spectacle and open hostility.

39.     After causing a scene, Defendant THARP called Defendant GREENBURG and tried to report PLAINTIFF for being "aggressive" with her, intentionally painting the trope of an angry black woman and attempting to have PLAINTIFF disciplined.

40.     In the interim, PLAINTIFF also contacted Michael Greenburg, privately, and reported the ongoing behaviors of Defendants THARP and LEONARD, hoping that he would address the matter as her complaints to Defendant DAVIDSON had gone entirely ignored. Defendant GREENBURG did not return any of PLAINTIFF's calls.

41.     Upon information and belief, Defendant GREENBURG did speak with Defendant THARP despite ignoring PLAINTIFF's requests for an audience.

42.     On February 25, 2020, Defendant THARP and PLAINTIFF were called into a meeting with Defendant DAVIDSON. Rather than address any of PLAINTIFF's complaint's about Defendant THARP or Defendant LEONARD's racist remarks, Defendant DAVIDSON reminded the women of their job descriptions and specific roles so they would hopefully "not step on each others' toes" in the future.

43.     On March 16, 2020, PLAINTIFF again reiterated her complaints about Defendant THARP and Defendant LEONARD's racist and insensitive commentary and toxic workplace behaviors to Defendant DAVIDSON. Nothing was done. Again, PLAINTIFF attempted to reach Defendant GREENBURG and again was ignored.

44.     As the Covid-19 pandemic escalated the office began to implement a Personal Protective Equipment ("PPE") policy. Defendant THARP refused to provide PLAINTIFF with any PPE despite providing the same to clients and other employees.

45.     Defendant THARP refused to provide PPE to any minority employee, providing it only to Caucasian employees. Upon information and belief, Defendant THARP also refused to provide PPE to several minority clients, but always provided PPE to Caucasian clients.

46.     Because Defendant THARP refused to provide it, PLAINTIFF was forced to purchase her own hand sanitizer, Clorox wipes and masks- despite the fact these basic supplies were provided to Caucasian employees.

47.     On April 13, 2020, Defendant THARP brought a box of masks in from her other employer. She proceeded to hand them out to Caucasian employees and despite having many to go around, refused to provide to PLAINTIFF (or any other minority employees) and locked them away.

48.     One of PLAINTIFF's Caucasian colleagues, Cheryl, noticed Defendant THARP's conduct and purchased PLAINTIFF masks herself.

49.     On April 18, 2020, PLAINTIFF was called into work to assist with a difficult client. PLAINTIFF arrived at work and was discussing the situation with her colleague, Carlos. Defendant THARP arrived to work and approached PLAINTIFF and Carlos and pulled him away from PLAINTIFF shouting "I know you and Heather are fucking and she will ruin your life and your marriage and you need to tell her to leave and if I see her here again I will have you both fired!"

50.     PLAINTIFF was mortified, humiliated and degraded. She had no romantic relationship with Carlos. She had come into work on her day off to help with patient at the request of a colleague. Further, Defendant THARP had no authority to fire anyone.

51.     Again, Defendant THARP created a scene, and created a hostile and toxic environment that substantially interfered with PLAINTIFF's ability to perform her job.

52.     On April 25, 2020, PLAINTIFF was at work outside assisting a patient. Defendant THARP pulled in to work and began texting Carlos that he had better tell PLAINTIFF to leave her job or she would have them both fired.

53.     On May 18, 2020, Defendant THARP openly refused to order toner for PLAINTIFF's printer, despite PLAINTIFF relying on her printer and fax to perform her job. When PLAINTIFF complained Defendant THARP lied and indicated that it had been ordered, but PLAINTIFF had to follow up multiple times with Defendant THARP becoming nastier each time. PLAINTIFF was not supplied with toner until the first week of June.

54.     On May 19, 2020, PLAINTIFF again attempted to raise complaints with Defendant DAVIDSON. Nothing was done. Again, Defendant THARP caught wind of PLAINTIFF's report and publicly started an argument about it. Again, PLAINTIFF attempted to call Defendant GREENBURG and received no reply.

55.     On May 29, 2020, a going away celebration was held for Defendant DAVIDSON with a cake. Defendant DAVIDSON had resigned and a celebration was held to send her off. Defendant THARP was charged with organizing the celebration. She deliberately did not invite PLAINTIFF and several other minority staff members.

56.     On June 2, 2020, Defendant GREENBURG finally returned PLAINTIFF's calls. PLAINTIFF was asked to address the issue with Defendant LEONARD, who was the acting Executive Director until a replacement was identified. PLAINTIFF would note that Defendant GREENBURG directed her to deal with her complaints of racism with one of the very same individuals (Defendant LEONARD) that she had been complaining about.

57.     Defendant THARP overheard PLAINTIFF attempting to address Defendant LEONARD with a message from Defendant GREENBURG and became irate that PLAINTIFF had spoken with Defendant GREENBURG. She accosted PLAINTIFF and refused to allow her to speak with

Defendant LEONARD, again shouting and being belligerent. Defendant THARP was so out of control that Defendant LEONARD told her to take the rest of the day off to "relax."

58.     After Defendant THARP left, PLAINTIFF tried to address the issue, along with the other issues with Defendants THARP and LEONARD directly with Defendant LEONARD as she had been directed to do. She asked to have a witness present to the conversation.

59.     PLAINTIFF brought along a witness, Gerald Jackson, who is also African American. Defendant LEONARD refused to speak to PLAINTIFF, telling her he would not be "attacked" and would not have a conversation with a witness.

60.     Defendant LEONARD accused Gerald Jackson, who was simply standing there quietly, of "attacking" him.

61.     Notably, despite her aggressive and belligerent behavior, Defendant THARP was never accused of "attacking" anyone and was told to go home and "relax." When Defendant LEONARD was approached calmly by PLAINTIFF and Mr. Jackson he accused them of "attacking" him and openly refused to speak to two of his black colleagues.

62.     On June 5, 2020, realizing nothing was going to be done about the behaviors of Defendants THARP and LEONARD, PLAINTIFF contacted the EEOC, completed the intake questionnaire (Inquiry Number 530-2020-04036) and made and appointment to file a charge.  She also contacted the NAACP Pottstown chapter.

63.     Defendant CURTIN began as Defendant ACA's Executive Director on or about June 8, 2020.

64.     On June 8, 2020, PLAINTIFF requested a meeting with Defendant CURTIN. She reported the ongoing discrimination and harassment she had been suffering and informed Defendant CURTIN she had filed with the EEOC and NAACP.

9

65.     Defendant CURTIN told her she would form her own opinions and made no further statements or assurances.

66.     Later that day, PLAINTIFF overheard Defendants THARP and LEONARD telling Defendant CURTIN that PLAINTIFF should be fired and needed to go.

67.     On June 16, 2020, a new patient arrived onsite and no one informed PLAINTIFF so she could walk him through the admissions process. DEFENDANT LEONARD performed the admissions protocols with the patient without informing PLAINTIFF he was there.

68.     PLAINTIFF came into the lobby looking for the patient and was ignored. The patient had to inform her he had already spoken with Defendant LEONARD, making PLAINTIFF appear disorganized and unprofessional.

69.     PLAINTIFF assigned the patient to an apartment and asked to have him escorted there. She was stopped by Defendant CURTIN who said Defendants LEONARD and THARP wanted new patients assigned to a different building and she had agreed to this change in protocol.

70.     PLAINTIFF asked why she was not advised so she could implement the changes while doing the admissions paperwork and was chastised by Defendant CURTIN. Again, information was being deliberately withheld from her impeding her ability to do her work effectively.

71.     Later in the day on June 16, 2020, PLAINTIFF approached Defendant CURTIN about the information being withheld and to remind her she had filed numerous complaints about Defendants THARP and LEONARD and their discriminatory behavior towards her. She asked if Defendant CURTIN would address her complaints. Defendant CURTIN stated, "I'll get to it when I get to it" and dismissed PLAINTIFF.

72.     Later that day Defendant CURTIN called PLAINTIFF into her office and terminated her.

73.     Defendant CURTIN told her it was because she did not have the educational prerequisites for the position, despite having worked for Defendant ACA for nearly two years.

74.     PLAINTIFF informed Defendant CURTIN that earlier in 2020 the Department of Drug and Alcohol programs had audited Defendant ACA and specifically noted that PLAINTIFF was qualified for her position.

75.     PLAINTIFF asked if this had anything to do with her contacting the EEOC or the NAACP. Defendant CURTIN indicated she had made her decision, ignoring the question.

76.     Defendant CURTIN told PLAINTIFF to gather her belongings and leave.

77.     PLAINTIFF immediately went to her office and began packing her things. Mr. Jackson watched her pack. According to Defendant ACA's policies upon separation an employee is to be observed while packing their belongings.

78.     PLAINTIFF told Mr. Jackson what had happened while she was packing.

79.     Not even five minutes later, Defendant CURTIN left her office, stormed into PLAINTIFF's office and told PLAINTIFF that PLAINTIFF and Mr. Jackson that PLAINTIFF needed to leave immediately because she (Defendant CURTIN) felt "threatened."

80.     PLAINTIFF had just left Defendant CURTIN's office and was in her own office speaking with Mr. Jackson and packing. It had not been five minutes since she had left Defendant CURTIN's office and she had had no further contact with Defendant CURTIN after leaving her office. In fact, Defendant CURTIN sought out PLAINTIFF and her black co-worker to tell them she was threatened by their presence.

81.     PLAINTIFF would note that George Floyd's death occurred on May 25, 2020, and that protests and riots had been occurring for weeks and racial tensions around the country, particularly when it pertained to law enforcement, were at an all-time high.

82.     Upon information and belief, Defendant CURTIN was aware of this widely reported incident and subsequent consequences.

83.     Despite PLAINTIFF following all protocols after her wrongful termination including having a colleague observe her pack her desk, and having been at it for a mere five minutes, Defendant CURTIN followed her, declared she "felt threatened," and stated she was going to call the police.

84.     PLAINTIFF, nor Mr. Jackson, had threatened Defendant CURTIN.

85.     PLAINTIFF and Mr. Jackson followed the handbook protocols following a separation.

86.     PLAINTIFF was in her office just herself and Mr. Jackson, physically nowhere near Defendant CURTIN, when Defendant CURTIN ridiculously proclaimed she was being threatened by the only two black people in the office and then subsequently threatened to call the police.

87.     Upon information and belief, Defendant Curtin did, in fact, call the police.

88.     PLAINTIFF would note that at the end of May 2020 the Amy Cooper incident occurred wherein a white woman threatened to call the police against a black man simply because he wanted her to leash her dog- using the fact that she was white and he was black to threaten to inappropriately weaponize the police force.

89.     Upon information and belief Defendant CURTIN was aware of this widely reported incident.

90.     Upon terminating PLAINTIFF, PLAINTIFF was instructed to get her things and go. She was not instructed at any point to immediately leave the building.

91.     PLAINTIFF went to her office to "get her things and go" and had been there for less than 10 minutes when she was accosted by Defendant CURTIN.

92.     Defendant CURTIN, a Caucasian female, inappropriately called the police on PLAINTIFF.

93.     Due to recent events and Defendant CURTIN's wildly inappropriate and racist behavior of contacting the police department upon two black employees, PLAINTIFF felt scared, threatened and humiliated and left the premises immediately, without her belongings.

94.     Upon information and belief, the police did report to Defendant's premises, and were baffled and angry as to why they had been called in the first place.

95.     As a result of Defendants' actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

96.     As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and PLAINTIFF also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

97.     That as a result of Defendants' conduct, the PLAINTIFF was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

98.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands Punitive Damages against all the Defendants jointly and severally.

99.     PLAINTIFF further claims aggravation, activation and/or exacerbation of any preexisting condition.

100.    PLAINTIFF claims that Defendants unlawfully discriminated against PLAINTIFF because of her race, national origin, and because she complained of an opposed the unlawful conduct of Defendants related to the above protected class.

101.    PLAINTIFF further claims constructive and/or actual discharge to the extent PLAINTIFF is terminated from PLAINTIFF's position as a result of the unlawful discrimination and retaliation.

102.    The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected PLAINTIFF to on a continuous and on-going basis throughout PLAINTIFF's employment.

103.    The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

104.    PLAINTIFF claims alternatively that PLAINTIFF is an Independent Contractor, and PLAINTIFF makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, PLAINTIFF claims that Defendant owed and breached its duty to PLAINTIFF to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

105.    PLAINTIFF claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

**COUNT I**
**DISCRIMINATION UNDER STATE LAW**
**HOSTILE WORK ENVIRONEMENT AND DISPARATE TREATMENT**
**(against corporate Defendants only)**

106.    PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

107.    PLAINTIFF'S PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's Charge.

108.    PLAINTIFF will seek leave to amend this complaint to assert her PHRA claims against the parties referenced in ¶ 26 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

109.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice:  "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness,

14

deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

110.     Defendants engaged in an unlawful discriminatory practice by discriminating against the PLAINTIFF because of PLAINTIFF'S race and/or national origin.

111.     The discrimination and harassment described above and incorporated into this Count was severe and pervasive and created a hostile work environment for PLAINTIFF.

112.     Defendants subjected Plaintiff to discrimination and harassment due to PLAINTIFF'S race and/or national origin.

113.     Defendants engaged in an unlawful discriminatory practice by unlawfully terminating PLAINTIFF because of PLAINTIFF'S race and/or national origin.

114.     PLAINTIFF hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

**COUNT II**
**RETALIATION UNDER STATE LAW - RETALIATION**
**(against all Defendants)**

115.     PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

116.     PLAINTIFF'S PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's Charge.

117.     PLAINTIFF will seek leave to amend this complaint to assert her PHRA claims against the parties referenced in ¶ 26 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

118.     PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

119.     Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the PLAINTIFF because of PLAINTIFF's opposition to the unlawful employment practices of PLAINTIFF'S employer.

120.     PLAINTIFF reported and opposed the discrimination and harassment and the abusive and hostile work environment was ratcheted up.   PLAINTIFF was subjected to discipline which includes but is not limited to not being permitted to take lunch breaks and being denied opportunities to work overtime.

**COUNT III**
**DISCRIMINATION UNDER STATE LAW – AIDING AND ABETTING…**
**(against individually named Defendants only)**

121.     PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

122.     PLAINTIFF'S PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's Charge.

123.   PLAINTIFF will seek leave to amend this complaint to assert her PHRA claims against the parties referenced in ¶ 26 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

124.   PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

125.   Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

126.   The individually named Defendants took active part by aiding, abetting, compelling, and inciting the discrimination and harassment described in detail above.

127.   Any individuals who may not have had direct supervisory authority over PLAINTIFF are still subject to individual liability under this section as they actively took unlawful action against PLAINTIFF pursuant to the direction, instruction, and sanctioning of individuals with direct supervisory authority over PLAINTIFF.

128.   Individuals without supervisory authority act with supervisory authority when they carry out unlawful discriminatory conduct at the direction and with the express authorization of individuals with supervisory authority.

## COUNT IV
## UNDER FEDERAL LAW
## <u>S.C. SECTION 1981</u>
### (against all named Defendants)

129.   PLAINTIFF hereby incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

130. 42 USC Section 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the
> United States shall have the same right in every State and Territory to make
> and enforce contracts, to sue, be parties, give evidence, and to the full and
> equal benefit of all laws and proceedings for the security of persons and
> property as is enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions of every kind, and
> to no other. (b) "Make and enforce contracts" defined for purposes of this
> section, the term "make and enforce contracts" includes the making,
> performance, modification, and termination of contracts, and the enjoyment
> of all benefits, privileges, terms, and conditions of the contractual
> relationship. 42 U.S.C.A. § 1981.

131.   PLAINTIFF was discriminated against by Defendants because of her race as provided

under 42 USC Section 1981 and has suffered damages as set forth herein.

132.   PLAINTIFF claims unlawful retaliation under 42 U.S.C. 1981 due to Defendant's

termination her employment due to her race and/or national origin.

133.   PLAINTIFF also claims unlawful retaliation under 42 U.S.C. 1981 for her opposition to

Defendants' unlawful employment practices.

## COUNT V
## DISCRIMINATION UNDER TITLE VII
## <u>HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT</u>
### (against corporate Defendants only)

134.   PLAINTIFF hereby incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

135.   This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the

unlawful employment practices of the above-named Defendants. PLAINTIFF complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race.

136.    SEC. 2000e-2. *[Section 703]* states as follows:

> (a) Employer practices
> It shall be an unlawful employment practice for an employer -
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

137.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against PLAINTIFF because of her race and/or national origin.

138.    The discrimination and harassment described above and incorporated into Count IV was severe and pervasive and created a hostile work environment for PLAINTIFF.

139.    Defendants subjected PLAINTIFF to discrimination and harassment due to PLAINTIFF'S race and/or national origin.

140.    Defendants subjected PLAINTIFF to discrimination and harassment by unlawfully terminating her employment due to her race and/or national origin.

141.    PLAINTIFF hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended.

**COUNT VI**
**RETALIATION UNDER TITLE VII**
**(against corporate Defendants only)**

142.    PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

143.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

144.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges, of her employment, and/or for wrongfully terminating her employment due to her race and/or national origin, and because of her opposition to and reporting of the unlawful employment practices of Defendants.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.


**DEREK SMITH LAW GROUP, PLLC**


By:      /s/Erica A. Shikunov___
         Erica A. Shikunov, Esquire

                                                     1835 Market Street, Suite 2950
                                                     Philadelphia, Pennsylvania 19103
                                                     Phone: 215.391.4790
                                                     Email: erica@dereksmithlaw.com

DATED: February 12, 2021